[Cite as *State v. Lisius*, 2016-Ohio-27.]

COURT OF APPEALS
ASHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| STATE OF OHIO | : | JUDGES: |
| | : | Hon. W. Scott Gwin, P.J. |
| Plaintiff-Appellee | : | Hon. Sheila G. Farmer, J. |
| | : | Hon. John W. Wise, J. |
| -vs- | : | |
| | : | |
| KARA J. LISIUS | : | Case No. 15-COA-015 |
| | : | |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:            Appeal from the Court of Common
                                    Pleas, Juvenile Division, Case No.
                                    20144091


JUDGMENT:                           Affirmed/Reversed in Part &
                                    Remanded


DATE OF JUDGMENT:                   January 6, 2016


APPEARANCES:

For Plaintiff-Appellee                  For Defendant-Appellant

EMILY M. BATES                          CHRISTINA I. REIHELD
110 Cottage Street                      P.O. Box 532
3rd Floor                               Danville, OH  43014
Ashland, OH  44805

*Farmer, J.*

{¶1} On August 26, 2014, a complaint was filed in the Juvenile Court, charging appellant, Kara Lisius, with one count of domestic violence in violation of R.C. 2919.25(A), one count of endangering children in violation of R.C. 2919.22(A), and one count of aggravated menacing in violation of R.C. 2903.21(A). Said charges arose from an incident between appellant and her son, D.M., on July 17, 2014.

{¶2} A bench trial commenced on March 6, 2015. By judgment entry filed same date, the trial court found appellant guilty of the domestic violence and endangering children counts, and not guilty of the aggravated menacing count. By judgment entry filed April 1, 2015, the trial court sentenced appellant to ninety days in jail on each charge, to be served concurrently, suspended in lieu of probation.

{¶3} Appellant filed an appeal and this matter is now before this court for consideration. Assignments of error are as follows:

I

{¶4} "KARA'S CONVICTIONS FOR DOMESTIC VIOLENCE AND CHILD ENDANGERING ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

II

{¶5} "THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY REFUSING TO ADMIT EVIDENCE OF PRIOR ACTS OF AGGRESSION BY THE ALLEGED VICTIM TOWARD KARA, EVIDENCE OF THE ALLEGED VICTIM'S REPUTATION FOR VIOLENCE BEHAVIOR, AND EVIDENCE OF PRIOR FALSE CLAIMS MADE BY THE ALLEGED VICTIM."

III

{¶6}   "KARA WAS PROVIDED INEFFECTIVE ASSISTANCE OF COUNSEL AS COUNSEL FAILED TO PRESENT ANY EVIDENCE RELATED TO THE ALLEGED VICTIM'S MENTAL HEALTH OR CORRECT MISCHARACTERIZATION OF MEDICAL EVIDENCE AND COMMITTED VARIOUS OTHER DEFICIENCIES WHICH AFFECTED THE OUTCOME OF THE TRIAL."

IV

{¶7}   "THE TRIAL COURT ERRED WHEN IT FAILED TO MERGE THE ENDANGERING CHILDREN AND DOMESTIC VIOLENCE COUNTS FOR PURPOSES OF SENTENCING."

I

{¶8}   Appellant claims her convictions were against the manifest weight of the evidence, as the only substantive evidence presented supports her defense that she was merely attempting to restrain her son.  We disagree.

{¶9}   On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."  *State v. Martin,* 20 Ohio App.3d 172, 175 (1st Dist.1983).  See also, *State v. Thompkins*, 78 Ohio St.3d 380, 1997-Ohio-52.  The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction."  *Martin* at 175.  We note the weight to be given to the evidence and the credibility of the witnesses are issues for the trier of

fact.  *State v. Jamison,* 49 Ohio St.3d 182 (1990).  The trier of fact "has the best opportunity to view the demeanor, attitude, and credibility of each witness, something that does not translate well on the written page."  *Davis v. Flickinger,* 77 Ohio St.3d 415, 418, 1997-Ohio-260.

{¶10} Appellant was convicted of domestic violence in violation of R.C. 2919.25(A) which states: "No person shall knowingly cause or attempt to cause physical harm to a family or household member," and endangering children in violation of R.C. 2919.22(A) which states: "No person, who is the parent, guardian, custodian, person having custody or control, or person in loco parentis of a child under eighteen years of age or a mentally or physically handicapped child under twenty-one years of age, shall create a substantial risk to the health or safety of the child, by violating a duty of care, protection, or support."

{¶11} Two versions of the events of July 17, 2014 were presented to the trial court.  Appellant claimed she was attempting to defuse the aggressive behavior of her son, D.M., and any harm caused by her defensive actions was unintentional.  T. at 105-109, 116.  She explained the following (T. at 107):

He was getting aggressive and so I did as I have been trained by the counselors and the case manager at Appleseed, and I attempted to restrain him without causing any harm to him or myself.  In the position that we were in facing each other, it wasn't really possible, so I tried to get him by the shoulders and gain control of his upper arms and hug him to

me is what I was initially trying to do, is to get him with his back to my chest and hug him so he could not harm myself or himself.

At which point he started kicking and punching and we both fell to the ground, and he was screaming at me and I yelled back at him and that was at the point where my - - when I was yelling I inadvertently - - saliva came out of my mouth and onto him, which, you know, he was in my face, I couldn't you know, it was not intentional, but accidental.

{¶12} The defensive actions were consistent with how she was instructed to handle her son's outbursts. T. at 108-109. Unfortunately, it developed into a "scrabble to get control of his trunk" and "it was kind of a mess." T. at 115, 116. D.M. testified and substantiated his mother's testimony, that he was the aggressor, he tried to kick her, and she attempted to hold him back. T. at 127-128. He denied that appellant choked him or was trying to kill him. T. at 129. He claimed he told the police and his neighbor, Judy Clark, that his mother tried to kill him to get his mother into trouble. T. at 47, 129-130, 132. Appellant's other son testified to D.M.'s violent acts toward their mother when he did not get his way, and gave examples of other incidents. T. at 87-89. Appellant's daughter testified she witnessed five to ten minutes of the incident and D.M. was the attacker and appellant was attempting to restrain him. T. at 94-95. Appellant held him so he would not hit her. *Id.* An intake investigator with the Ashland County Department of Job and Family Services, Roland Flick, stated appellant told him D.M. lunged at her and hit her in the face area. T. at 156.

{¶13} In sharp contrast to the above testimony, Ashland Police Officer Kim Mager testified to the demeanor and visible marks on D.M. consistent with choking. T. at 29-30. She noticed his voice was hoarse which is "indicative of strangulation." T. at 29. Photographs of the injuries were marked into evidence and were described in detail by Officer Mager. T. at 31-36; State's Exhibits 1-6.

{¶14} Donald Ballard, a physician's assistant who treated D.M. at the hospital, testified to the injuries and found them to be consistent with choking. T. at 54-55. He opined the injuries were fresh. T. at 56-58.

{¶15} It is not our position to second guess the trier of fact who has the ability to observe the demeanor and believability of the various witnesses. With two dramatically different views of the events, the issue becomes "Whom Do You Trust?" It is obvious appellant's children, including her son, circled the wagon to protect their mother.

{¶16} Upon review, given the choice of who to trust versus D.M.'s recanted testimony, we find the trial court did not err in finding the responding officer, the unbiased neighbor, and the medical professional to be more credible. We find the trial court did not lose its way.

{¶17} Assignment of Error I is denied.

II

{¶18} Appellant claims the trial court erred in denying the admission of the victim's reputation for violent behavior and false claims which was necessary to establish her claim of self-defense. We disagree.

{¶19} First, although the state objected to evidence concerning D.M.'s violent behavior, the trial court permitted testimony on the issue. T. at 81-87. D.M.'s brother

testified to numerous incidents of D.M.'s violent behavior when denied something and then acting out against appellant. T. at 87-89. Appellant also testified to D.M.'s violent history and the training she received to protect her son and herself. T. at 107, 108-109. Appellant testified to D.M. having a counselor, a case manager, a psychiatrist, and a school counselor. T. at 109. There is no other proffer or argument as to any other testimony that appellant wished to present but was denied.

{¶20} An error not raised in the trial court must be plain error for an appellate court to reverse. *State v. Long,* 53 Ohio St.2d 91 (1978); Crim.R. 52(B). In order to prevail under a plain error analysis, appellant bears the burden of demonstrating that the outcome of the trial clearly would have been different but for the error. *Long.* Notice of plain error "is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *Id.* at paragraph three of the syllabus.

{¶21} Appellant testified to being afraid of being harmed by D.M., as he had been violent with her for many years. T. at 106. The last time prior to the incident sub judice was two days. T. at 106-107. Within the record is the physical size difference of appellant and D.M. D.M. was taller and stronger than his mother. T. at 109.

{¶22} Upon review, we find no actual denial of any relevant testimony by the trial court.

{¶23} Assignment of Error II is denied.

III

{¶24} Appellant claims she was denied effective assistance of trial counsel by counsel's failure to introduce evidence of D.M.'s mental health, to object and correct

mischaracterized evidence, to properly prepare her claim of self-defense, to inform her of the consequences of a conviction to her state license, to present evidence contra to the state's witnesses, and to argue Evid.R. 404 in a self-defense case.  We disagree.

{¶25}  The standard this issue must be measured against is set out in *State v. Bradley,* 42 Ohio St.3d 136 (1989), paragraphs two and three of the syllabus.  Appellant must establish the following:

2. Counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance.  (*State v. Lytle* [1976], 48 Ohio St.2d 391, 2 O.O.3d 495, 358 N.E.2d 623; *Strickland v. Washington* [1984], 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, followed.)

3. To show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different.

{¶26}  As to evidence of D.M.'s mental health status, the record discloses that D.M. saw numerous mental health professionals and had recurrent incidents of violence.  T. at 89, 109.

{¶27}  Appellant argues her trial counsel failed to effectively cross-examine the physician's assistant, Donald Ballard.  Mr. Ballard's testimony was cumulative to Officer

Mager's testimony and the photographs of D.M. immediately after the incident. There were no determinative findings, only Mr. Ballard's observations of redness and swelling. T. at 54-57.

{¶28} Appellant also argues her trial counsel failed to properly prepare her, to inform her of the consequences of a conviction, and to present further evidence on her defense. None of these claims are supported by the record. Appellant testified and defended herself on the issue of self-defense. T. at 107-109. There is no proof of any other evidence. At the time of the incident, only three persons were present, appellant, D.M., and his sister.

{¶29} Upon review, we do not find any ineffective assistance of counsel.

{¶30} Assignment of Error III is denied.

IV

{¶31} Appellant claims the trial court erred in not following R.C. 2941.25(B) and not merging the offenses of domestic violence and endangering children. We agree.

{¶32} R.C. 2941.25 governs multiple counts and states the following:

(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a

separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

{¶33} The Supreme Court of Ohio once again redefined "separate animus" in *State v. Ruff,* 143 Ohio St.3d 114, 2015-Ohio-995, paragraph two of the syllabus and ¶ 30-31, respectively:

Two or more offenses of dissimilar import exist within the meaning of R.C. 2941.25(B) when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable.

***

Rather than compare the elements of two offenses to determine whether they are allied offenses of similar import, the analysis must focus on the defendant's conduct to determine whether one or more convictions may result because an offense may be committed in a variety of ways and the offenses committed may have different import. No bright-line rule can govern every situation.

As a practical matter, when determining whether offenses are allied offenses of similar import within the meaning of R.C. 2941.25, courts must ask three questions when defendant's conduct supports multiple offenses: (1) Were the offenses dissimilar in import or significance? (2) Were they

committed separately? and (3) Were they committed with separate animus or motivation? An affirmative answer to any of the above will permit separate convictions. The conduct, the animus, and the import must all be considered.

{¶34} In reviewing the evidence, there is but one single act of conduct of which appellant was convicted. Appellant knowingly caused physical harm to D.M. No other separate conduct was alleged. Further, there was no separate identifiable harm, nor was there a separate animus.

{¶35} Therefore, the state must elect which of the two offenses it wishes to pursue in sentencing.

{¶36} Assignment of Error IV is granted.

{¶37} The judgment of the Court of Common Pleas of Ashland County, Ohio, Juvenile Division is hereby affirmed in part and reversed in part, and the matter is remanded to said court for further proceedings consistent with this opinion.

By Farmer, J.

Gwin, P.J. and

Wise, J. concur.

SGF/sg